UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LEASE AND RENTAL MANAGEMENT CORP., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-1528 (CFD) |
| | : | |
| THOMAS B. BOYD, | : | |
| Defendant. | : | |

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Lease and Rental Management Corporation ("Lease & Rental") brought this action against Thomas B. Boyd ("Boyd") for breach of guaranty. Lease & Rental moves for summary judgment. Boyd opposes the motion, claiming estoppel and unclean hands as affirmative defenses. For the reasons that follow, Lease & Rental's motion is granted.

**I.    Factual Background**[1]

Lease & Rental is a Massachusetts corporation and Boyd is a citizen of Connecticut. Boyd's spouse, Rose Marie Boyd, owns a large piece of real property in Winchendon, Massachusetts, referred to as the Lake Monomonoc Parcels. According to Boyd, in 2006 he and his wife owed the Town of Winchendon $850,000 in overdue property taxes for that property. The Town had given the couple little time in which to satisfy the tax debt and the Boyds were searching for financing for it from various banks and lenders. In doing so, the Boyds became acquainted with the Bank of Southern New Hampshire ("BSNH"), a private bank and the parent company to Lease & Rental. The Boyds' main contact at BSNH was Kevin Hern, a Vice

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

President and board member of the Bank. Boyd claims that Hern was very interested in the Lake Monomonoc Parcles property and envisioned a number of development opportunities for the land. Boyd also represents that Hern indicated that Lease & Rental would offer an initial loan to the couple, and then, after a time, parent company BSNH would rewrite the loan for a larger amount to fund further development. According to Boyd, there were other private lenders interested in extending a loan to the Boyds, but the couple decided to contract with Lease & Rental because it was the bank that offered the most complete construction and development package.

On November 10, 2006, Lease & Rental provided Rose Marie Boyd with a six-month, $800,000 mortgage loan. The loan was evidenced by a Term Note and Mortgage and Security Agreement and Financing Statement. In addition, Boyd executed a Guaranty Agreement in which Boyd guaranteed the payment by his wife of all sums due under the Term Note.[2] Payment of the balance and interest of the loan was due on May 10, 2007.

On June 19, 2007, Lease & Rental and Rose Marie Boyd entered into a Modification Agreement in which the parties agreed that the payment date for the loan would be extended until August 10, 2007. Boyd reaffirmed his guaranty at that time. On October 24, 2007, a Second Modification was executed, whereby Lease & Rental agreed to advance an additional $100,000 to Boyd and a new final payment date of February 10, 2008 was established. The parties later

---

[2] The Guaranty Agreement states: "To induce LEASE AND RENTAL MANAGEMENT CORP. . .to enter into the foregoing Loan Arrangement. . .with the above-named Borrower . . . the undersigned Guarantor hereby guarantees the payment to Lender of all sums which may be presently due and owing to Lender from Borrower under said Loan Arrangements . . . including . . . all principal interest, fees, and expenses."

signed a Third Modification, extending the maturity date of the loans until May 10, 2008. Finally, they entered into a Fourth Modification on August 28, 2008, which extended the date for payment of the Note, Guaranty, and Mortgage to October 29, 2008. In consideration for Lease & Rental extending the repayment date, Boyd and his wife signed the new agreement, which stated that Lease & Rental had performed all of its obligations. The Fourth Modification also included a waiver provision, which stated that the Boyds "expressly waive[d] any and all claims of whatsoever nature [that the Boyds had] or may have had against [Lease & Rental] for any breach of any . . . obligations or purported obligations occurring prior to the execution" of the Fourth Modification Agreement.

No payments have been made on the loan by either Boyd or his wife since May 2008. As of the date of this Order, the total principal and interest due under the loan, as modified, is $1,340,244.06.[3] Additionally, BSNH has refused to rewrite the Lease & Rental loan.

Lease & Rental brought suit for breach of the guaranty in this Court on September 28, 2009 against Thomas Boyd on the basis of diversity jurisdiction.[4]

**II.     Discussion**

   A.     Summary Judgment Standard

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White

---

[3] As of February 28, 2010, the total principal and interest due under the loan, including late fees, was $1,197,893.12, with interest accruing at a rate of $456.25 per day. See Declaration of Debt ¶ 4.

[4] Rose Marie Boyd is not a party.

v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  Once the moving party has met its burden, in order to defeat the motion the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38.  "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party."  Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the non-moving party must be credited if a reasonable jury could credit it.  Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000).  "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

B.  Breach of Guaranty

To succeed on a breach of contract claim under Massachusetts law,[5] the plaintiff must prove that (1) the parties reached a valid and binding agreement; (2) the defendant breached the terms of the agreement; and (3) the defendant suffered damages from the breach. See Michelson v. Digital Fin. Servs., 167 F.3d 715, 721 (1st Cir. 1999).

It is undisputed that Rose Marie Boyd failed to repay the underlying loan agreement. The Guaranty Agreement establishes that Boyd is responsible for "all sums which may be presently due and owing to Lender from Borrower under said Loan Arrangement . . . including . . . all principal interest, fees, and expenses." According to the final agreement of the parties, memorialized in the Fourth Modification, the full amount of the loan was due on October 29, 2008. It is also undisputed that no payments have been made since May 2008, leaving Lease & Rental with an unpaid balance of over $1 million dollars in outstanding, extended funds. Accordingly, this Court concludes that Boyd has breached his duties under the Guaranty Agreement.

C.  Affirmative Defenses

Boyd has raised two affirmative defenses for his breach—unclean hands and promissory estoppel. Boyd, however, waived his right to raise both of these defenses by signing an unconditional guaranty.

The original Guaranty Agreement entered into between Boyd and Lease & Rental, dated November 10, 2006, stated that "[t]he Guarantor . . . agrees . . . that the liability of Guarantor

---

[5] The original Guaranty establishes Massachusetts law as the parties' choice of law and the parties do not dispute the validity of the choice of law provision.

hereunder is direct and unconditional and may be enforced without requiring Lender first to resort to any other right, remedy, or security . . . ." Similarly, the Fourth Modification stated that "[The Boyds] . . . expressly waive[d] any and all claims of whatsoever nature [that the Boyds had] or may have had against [Lease & Rental] for any breach of any . . . obligations or purported obligations . . . ."

An unconditional guaranty is a separate and distinct obligation that may be enforced without regard to any defenses under a note. See Fleet Nat'l Bank v. Phillips, 2006 Mass. App. Div. 107 (July 19, 2006). Indeed, numerous courts have found unconditional guaranties to waive affirmative defenses against enforcement. See Merillat Indus., Inc. v. Johnston, 865 F. Supp. 60, 63–64 (D. Mass. 1994) (holding that when a guaranty was clearly unconditional and waived all defenses from the guarantor, the guarantor could not avoid his obligations by raising defenses such as fraudulent inducement); see also Citicorp Leasing, Inc. v. United Am. Funding Inc., No. 03 Civ.1586, 2005 WL 1847300, at *5 (S.D.N.Y. Aug. 5, 2005) ("Therefore, a defendant cannot rely on defenses that were waived by a guarantee to defeat summary judgment, even if the defendant establishes an issue of fact."). Even where an affirmative defense seems meritorious or where there are genuine issues of disputed fact as to the defense, a waiver or unconditional guaranty has precluded the defense. See United States v. Mallet, 782 F.2d 302, 303 (1st Cir. 1986) (noting that courts have uniformly upheld the "waiver-of-defenses" language); Citicorp Leasing, 2005 WL 1847300, at *5 (noting that disputed issues of fact are not enough to overcome an unconditional guaranty and waiver of defenses).

In this case, the parties' contract terms are clear. The Fourth Modification waived "any and all claims of *whatsoever nature*" that the Boyds had or may have had against Lease & Rental

"for any breach of *any . . . obligations or purported obligations* occurring prior to the execution of [the] Agreement" (emphasis added). Although the waiver of claims does not explicitly mention affirmative defenses, it does include claims for any breach of obligation occurring at any time prior to the execution of the Fourth Modification. Since both affirmative defenses that Boyd seeks to raise rely on actions taken prior to the execution of the Fourth Modification—Lease & Rental improperly inducing him into executing the agreement (unclean hands) and Lease & Rental breaching its initial promise to rewrite the loan (estoppel)—the waiver language controls, and Boyd's authority to raise such defenses is precluded.

While the sophistication of the parties entering into an agreement can be a factor in deciding the enforceability of a waiver clause, it is not an impediment here. See, e.g., SKW Real Estate Ltd. P'ship. v. Gold, 702 N.E.2d 1178, 1182 (Mass. 1998) (noting that there was no justification for abrogating the rule of unconditional guaranties when the parties were seemingly experienced business persons engaging in a sophisticated commercial transaction involving large sums of money). Boyd entered into numerous agreements with Lease & Rental, the intent was commercial development of the property, and the record is devoid of any evidence that Boyd was confused or misled by the various contractual terms. In fact, because only the Fourth Modification includes an express waiver clause (the three previous Modifications do not contain such a term), the record indicates that the inclusion of the express waiver was an intended concession. Notably, Boyd has not argued that he was unaware of the unqualified nature of the waiver or Guaranty. As such, even when this Court resolves all ambiguities and draws all permissible factual inferences in favor of Boyd, the terms of the Guaranty control. Accordingly, Boyd is barred from raising both of his affirmative defenses.

## III. Conclusion

For the reasons set forth above, the plaintiff's Motion for Summary Judgment [Dk #34] is GRANTED. Judgment shall enter for Lease & Rental in the amount of $1,340,244.06. The clerk is directed to close this case.

SO ORDERED this <u>6th</u> day of January 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**